United States District Court
Southern District of Texas
**ENTERED**
February 27, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHANETTA GUIDRY LEWIS, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | CIVIL ACTION NO. 4:22-cv-00844 |
| | § | |
| CITY OF HOUSTON, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

### ORDER

Pending before the Court is defendant City of Houston's Motion to Dismiss (Doc. No. 16) and defendants Troy Finner, Chief of Police ("Chief Finner"), and Officers Devin Inocencio ("Inocencio"), Victor Villarreal ("Villarreal"), Peter Carroll ("Carroll"), and Shaun Houlihan's ("Houlihan") (collectively, "Individual Officers") Motions to Dismiss (Doc. Nos. 15, 28). Plaintiff Shanetta Guidry Lewis ("Plaintiff") collectively responded to the three motions (Doc. No. 30), and all Defendants collectively replied (Doc. No. 31). Having considered the motions, the parties' briefs, and the applicable law, the Court hereby **GRANTS** in part and **DENIES** in part the Motions to Dismiss.

### I. Background

This is, in large part, a federal civil rights case stemming from the death of Charion Lockett ("Lockett") after Houston police officers attempted to execute a felony arrest warrant for aggravated robbery with a deadly weapon. (Doc. No. 15 at 3). Based on her pleadings, Plaintiff Shanetta Guidry Lewis's relationship with Lockett is not described, but for purposes of this Order, the Court will assume she has a standing to bring this suit. According to Plaintiff's Amended Complaint, around November 2021, the Houston Police Department ("HPD") began investigating

an alleged armed robbery. (Doc. No. 13 at 4). Plaintiff contends that after an initial, failed attempt to secure an arrest warrant from a judge, a second arrest warrant for Lockett was approved by another judge based "upon false statements." (*Id.*).

Around approximately 9:30 AM on February 7, 2022, an unidentified officer from HPD contacted Lockett and informed him that there was a warrant for his arrest in connection with the previously mentioned armed robbery. (*Id.* at 5). Plaintiff alleges that Lockett informed the officer on the phone that he intended to retain an attorney and that he would turn himself in later that day. (*Id.*). How subsequent events unfolded is heavily disputed by the parties. Nevertheless, based upon the Amended Complaint, an hour later, Lockett was allegedly sitting in his parked vehicle outside of his home when HPD officers arrived to execute the warrant for his arrest. (*Id.*). Officer Inocencio, dressed in civilian clothing, allegedly pulled up in an unmarked red vehicle to the home where Lockett was parked, and, without identifying himself as a police officer, shot Lockett. (*Id.*). Plaintiff alleges Inocencio opened fire first, which prompted Officers Caroll, Houlihan, and Villareal to also open fire on Lockett (also without identifying themselves as law enforcement) while Lockett attempted to flee. (*Id.*). Defendants obviously disagree with Plaintiff's version of the facts. They appear to allege that Lockett had a gun and fired at the Individual Officers first, which prompted their gunfire in response. (Doc. No. 15 at 10). Lockett was pronounced dead at the scene.

Plaintiff brings several causes of action against Defendants. According to her Amended Complaint, Plaintiff's causes of action are as follows:

1. Claim against Chief Finner and the Individual Officers, in their individual capacities, and the City of Houston under 42 U.S.C. § 1983 and 1988 because they allegedly

violated the Fourth and Fourteenth Amendments of the United States Constitution by using excessive force and conducting an unreasonable search and seizure.

2. Claim for municipal liability against the City of Houston under 42 U.S.C § 1983 and 1988 because it has allegedly adopted a custom, policy, practice, and procedure of using excessive force on individuals and failing to discipline or train officers adequately.

3. Claim against Individual Officers, in their individual capacities, under 42 U.S.C. § 1983 for allegedly failing to intervene.

4. Claims for common law assault under Texas law.

The Individual Officers and the City of Houston moved to dismiss Plaintiff's claims in their entirety. Individual Officers argue that Plaintiff's claims fail to state a claim upon which relief may be granted because (1) Plaintiff's state law tort claims are improper under the Texas Tort Claims Act ("TTCA") election of remedies scheme; (2) Plaintiff's Fourteenth Amendment claims are impermissibly also framed under the Fourth Amendment; (3) Plaintiff's claims against Chief Finner in his individual capacity fail to state a claim; (4) Plaintiff's claims are conclusory and insufficient to overcome each officer's qualified immunity.[1] (*See* Doc. Nos. 15, 28). The City of Houston also adopts the first and second arguments of the Individual Officers' Motion, and further argues: (1) Plaintiff's federal claims against the City of Houston fail to implicate municipal liability; (2) Plaintiff's failure to intervene claims are conclusory; and (3) Plaintiff cannot establish moving force. (*See* Doc. No. 16). Plaintiff responded in opposition (Doc. No. 30) and Individual Officers and City of Houston replied (Doc. No. 31).

---

[1] Although the Individual Officers filed two separate Motions to Dismiss—with defendants Chief Finner and Officers Inocencio, Villareal, and Houlihan grouped in one motion and Officer Carroll in another, the Court will be considering the two Motions together because the arguments are nearly identical and there do not appear to be obvious distinctions between the two.

3

## II. Legal Standard

A defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

To determine whether to grant a Rule 12(b)(6) motion, a court may look only to allegations in a complaint to determine their sufficiency. *Santerre v. Agip Petroleum Co., Inc.*, 45 F.Supp.2d 558, 568 (S.D. Tex. 1999); *Atwater Partners of Texas LLC v. AT & T, Inc.*, 2011 WL 1004880 (E.D. Tex. 2011). A court may, however, also consider matters outside the four corners of a

4

complaint if they are incorporated by reference, items subject to judicial notice, matters of public record, orders, items appearing in the record of a case, and exhibits attached to a complaint whose authenticity is unquestioned. *See Chawla v. Shell Oil Co.*, 75 F.Supp.2d 626, 633 (S.D. Tex. 1999); *Brock v. Baskin-Robbins USA Co.*, 113 F.Supp.2d 1078, 1092 (E.D. Tex. 2000) (at motion to dismiss for failure to state a claim, a court may consider an indisputably authentic document that is attached as an exhibit, if plaintiff's claims are based on the document).

### III. Analysis

#### A. State Law Claims Against All Defendants

Defendants first argue that Plaintiff's assault claims against the Chief Finner, the Individual Officers, and the City of Houston must be dismissed pursuant to the TTCA election of remedies scheme. Under the TTCA, "a public employee may be individually liable for his tortious conduct outside the general scope of employment." Tex. Civ. Prac. & Rem. Code § 101.106. Section 101.106 of the TTCA, however, "require[es] a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the Tort Claims Act or proceeding against the employee alone." *Mission Consol. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008). If the plaintiff sues both the employer and employee, section 101.106(e) requires that the employee be "immediately dismissed" on the employer's motion. *Univ. of Tex. Health Sci. Ctr. at Houston v. Rios*, 542 S.W.3d 530, 532 (Tex. 2017).

In Plaintiff's Amended Complaint, she does not specify as to which Defendant her assault claim applies. This, in and of itself, violates the Fifth Circuit rule against group pleadings. *See Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004). It is unclear from the Amended Complaint whether she intended to address the assault claim toward Individual Officers only or to both the Individual Officers, Chief Finner, and the City of Houston.

(Doc. No. 13 at 28). The relevant section of Plaintiff's pleadings concerning assault has been reproduced below.

> **ASSAULT**
>
> 70. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.
> 71. A defendants is liable for assault if
>   1. The defendant acted intentionally, knowingly, or recklessly.
>   2. The defendant made contact with the plaintiff's person.
>   3. The defendant's contact caused bodily injury to the plaintiff.

In her Response in opposition to the dismissal motions, Plaintiff contends that she "did not name the City of Houston" and that she "did not state a TTCA claim against it," so her assault claims are against the Individual Officers only. (Doc. No. 30 at 7). As can be seen, Plaintiff uses both the plural and the singular of "defendant" in paragraph 71, and also incorporates all of her prior claims against all of the Defendants. Consequently, her claim is somewhat ambiguous. Under the TTCA, however, Plaintiff's lack of specificity in her Complaint is treated as an election to proceed against the City of Houston only and individual employees' right to dismissal under the TTCA cannot be cured by amendment or dismissal of her claims against the governmental employer. *Rios*, 542 S.W. 530 at 537. Here, Plaintiff has already amended her complaint once and did not cure this problem. Plaintiff's attempted abandonment of her assault claim against the City of Houston in her Response does not cure the language of her Amended Complaint. Thus, since Plaintiff appears to assert the same assault claim against the Individual Officers as against the City of Houston and the City of Houston has filed a Motion to Dismiss, Plaintiff's assault claims against the Individual Officers must be dismissed under the TTCA's election of remedies scheme.

Governmental immunity bars Plaintiff's state law claims against the City of Houston as well. Governmental units in Texas are presumed immune from suit, unless the TTCA expressly waives immunity. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224-25 (Tex. 2004). The TTCA governs Plaintiff's assault claim because it is a common law tort against a governmental unit. Tex. Civ. Prac. & Rem. Code § 101.057. Plaintiff thus bears the burden of demonstrating that the governmental unit has waived its immunity. *The Univ. of Texas at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010). In its Response in opposition, Plaintiff expressly concedes that assault is an intentional tort for which the TTCA does not waive the City of Houston's immunity. (Doc. No. 30 at 7). Since Plaintiff has failed to show that the City of Houston has waived its immunity from suit, Plaintiff also cannot proceed with her state law assault claims against the City of Houston and they must also be dismissed.

### B. Fourteenth Amendment Claims Against All Defendants

Plaintiff brings § 1983 claims against Chief Finner, the Individual Officers, and the City of Houston and pleads that they violated the Fourth Amendment when used unreasonable methods and excessive force on Lockett, which also violated his due process rights under the Fourteenth Amendment. (Doc. No. 13 at 25). In its Motions to Dismiss, Defendants contend that Plaintiff impermissibly framed her Fourteenth Amendment claims under the Fourth Amendment. Since the Fourth Amendment covers excessive force and unreasonable searches and seizures, Defendants argue that Plaintiff cannot seek relief under the Fourteenth Amendment. (Doc. No. 15 at 6-7). Moreover, Defendants argue that because Plaintiff failed to address her Fourteenth Amendment claim in her Response in opposition, she has abandoned this cause of action. (*See* Doc. No. 30).

Defendants rely upon *Gone v. Smith*, where the plaintiff brought both Fourth and Fourteenth Amendment claims against the City of Pasadena. 2017 WL 978703 (S.D. Tex. Mar.

7

14, 2017). In *Gone*, the court held that the plaintiff's Fourteenth Amendment claim should be dismissed since plaintiff failed to plead any specific unconstitutional conduct in violation of the Fourteenth Amendment. *Id.* at *3. After dismissing plaintiff's Fourteenth Amendment claims, the court consolidated and considered plaintiff's claims of excessive force under the Fourth Amendment. *Id.* This Court will do the same. Plaintiff has not pled unconstitutional conduct specific to the Fourteenth Amendment. Based on Plaintiff's Amended Complaint, excessive force, which is covered by the Fourth Amendment, appears to be her central claim. Thus, the Court will consolidate and consider all of Plaintiff's § 1983 claims as alleged violations of the Fourth Amendment.

Moreover, a party's failure to respond to arguments raised in a motion to dismiss constitutes waiver or abandonment of those issues at the district court level. *Sims v. Nacogdoches County, Texas*, 2022 WL 3207460 at *3 (E.D. Tex. July 18, 2022) (quoting *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)). Plaintiff's Response in opposition is wholly devoid of any mention of her Fourteenth Amendment claims. (*See* Doc. No. 30). Given that Plaintiff has primarily framed her claims under the Fourth Amendment and also failed to address or defend her Fourteenth Amendment claim in her Response in opposition, the Court dismisses Plaintiff's Fourteenth Amendment claims and will consider her excessive force claims under the Fourth Amendment only.

### C. Failure to Intervene Claim Against Individual Officers

Although Plaintiff pleads a failure to intervene claim against the Individual Officers, she does not allege any facts to support this cause of action in her Amended Complaint. Moreover, there is no mention, discussion, or defense of this claim in her Response in opposition to Defendants' Motions to Dismiss. (*See* Doc. No. 30). Since the Amended Complaint is wholly

devoid of facts concerning her failure to intervene claim and Plaintiff failed to address or defend this claim in her Response, this Court finds that Plaintiff has abandoned her failure to intervene claim and it too is hereby dismissed.

### D. Section 1983 Claim Against Chief Finner

Defendants contend that Plaintiff's claims against Chief Finner in his individual capacity must be dismissed because a § 1983 claim must be based on a defendant's actual participation in an event that causes a violation of civil rights. *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008); (Doc. No. 15 at 8). Although Plaintiff names Chief Finner in his individual capacity in her Amended Complaint, she fails to plead any facts connecting him to the events associated with Lockett's death. (*See* Doc. No. 13). Plaintiff's only substantive mention of Chief Finner in her Amended Complaint are conclusions in which she alleges that a "culture and pattern of abiding and secreting away instances of excessive force was known and perpetrated by Chief [Finner]" and that he and other HPD officials "have routinely kept information and videos of shootings in Houston internal."[2] (Doc. No. 13 at 8).

The Court finds that Plaintiff has failed to plead relevant facts pertaining to Chief Finner in his individual capacity that state a claim upon which relief may be granted. Plaintiff does not allege that Chief Finner was involved with the logistics behind the execution of Lockett's arrest warrant or that he was present during the execution of the arrest warrant at all or that he even knew about it before the fact. To the extent that Plaintiff has pled any facts involving Chief Finner, they appear to implicate his involvement in a policy, practice, or custom rather than as part of the circumstances surrounding Lockett's death. This would necessarily pertain to his duties in his

---

[2] Although Plaintiff attempts to incorporate additional allegations concerning Chief Finner's involvement in Lockett's death in her Response in opposition, a Rule 12(b)(6) Motion to Dismiss is judged on the live complaint. It cannot be aided by outside argument. Thus, Plaintiff's arguments advanced in her Response in opposition were not discussed here.

official capacity, not his individual capacity. Thus, absent the pleading of any facts suggesting Chief Finner's direct involvement in executing Lockett's felony arrest warrant, Plaintiff's § 1983 claims against Chief Finner in his individual capacity are hereby be dismissed.

### E. Section 1983 Claims Against Individual Officers Inocencio, Villarreal, Carroll, and Houlihan

Individual Officers Inocencio, Villareal, Carroll, and Houlihan argue in their Motion to Dismiss that Plaintiff's § 1983 claims against them are conclusory and insufficient to overcome their qualified immunity (Doc. No. 15 at 7). In her Amended Complaint, Plaintiff pleads that Lockett was shot by Officer Inocencio while he sat in his parked vehicle, posing no immediate threat to anyone. (Doc. No. 13 at 5). According to Plaintiff, Lockett was first shot at by Inocencio, who arrived in an unmarked vehicle, in civilian clothes, and without Inocencio providing a warning or even identifying himself as a police officer. (*Id.*). Inocencio's gunfire then prompted fire from Villarreal, Carroll, and Houlihan, who shot Lockett in the back while he was attempting to flee. (*Id.* at 6). Plaintiff alleges that Villareal, Carroll, and Houlihan similarly did not provide warnings and failed to identify themselves as police before shooting. (*Id.*).

When evaluating a defendant's qualified immunity defense at the motion to dismiss stage, a district court must first find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *See Est. of Bonilla v. Orange Cnty.*, 982 F.3d 298, 306 (5th Cir. 2020) (quoting *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016)) ("Once a defendant asserts the qualified immunity defense, '[t]he plaintiff bears the burden of negating qualified immunity.'"). A plaintiff seeking to overcome qualified immunity at the pleading stage must allege: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 732 (2011).

10

While Plaintiff's Amended Complaint contains some speculative and conclusory statements, the Court finds the pleadings sufficient and cannot grant dismissal based on qualified immunity during this procedural stage of the litigation. Plaintiff clearly contends that the officers, intentionally and without cause, shot and killed Lockett. These allegations, if true, would satisfy the two elements cited above. Moreover, although qualified immunity inherently provides freedom from suit and is designed to protect defendants from costly pretrial discovery, it is clear that further factual development into the circumstances surrounding Lockett's death is necessary for this Court to ascertain the availability of qualified immunity as a defense. *See generally Pearson v. Callahan*, 555 U.S. 223, 237 (2009); *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014). When considering a Rule 12(b)(6) Motion to Dismiss, the Court must presume that the allegations within Plaintiff's Complaint are true. Taken as true, Plaintiff has sufficiently pled that the Individual Officers violated a constitutional right, and that this right was clearly established at the time of the challenged conduct. Moreover, a qualified immunity analysis would challenge the underlying merits of the complaint and thus be better suited for consideration in a motion for summary judgment context, rather than during a motion to dismiss, which requires the Court to solely consider the sufficiency of the complaint. In the present dispute, the chronology and facts surrounding Lockett's death are highly disputed by the parties. Defendants are free to raise and revisit their qualified immunity arguments in a future motion for summary judgment. Thus, Plaintiff's § 1983 claims against defendants Inocencio, Villareal, Carroll, and Houlihan survive Defendants' Motion to Dismiss.

### F. Section 1983 Claims Against the City of Houston

Plaintiff alleges that the City of Houston "has a custom, policy, practice, and procedure of using excessive force on individuals and not disciplining or training officers adequately." (Doc.

11

No. 13 at 25). In its Motion to Dismiss, the City of Houston argues that Plaintiff's § 1983 claims against it must be dismissed because she fails to plead facts that implicate municipal liability.

First, it is clear that the City of Houston, as a municipality, may not be held liable under § 1983 on the basis of vicarious liability. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978); *see also Kitchen v. Dall. Cty.*, 759 F.3d 468, 476 (5th Cir. 2014). Municipalities may be liable, however, where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690, 98 S.Ct. 2018.

For municipal liability to attach, claims filed under § 1983 require a plaintiff to show three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the policy or custom. *See Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). A plaintiff must still "provide fair notice to the defendant, and this requires more than generically restating the elements of municipal liability." *Id.* Such allegations may include "past incidents of misconduct to others, multiple harms that occurred to the plaintiff, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy." *Id*; *see Custer v. Houston Police Dept.*, 2017 WL 5484114 (Nov. 15, 2017).

At the motion to dismiss stage, plaintiffs need not identify a particular policymaker by name to establish municipal liability but must plead facts that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker. *Groden v. City of Dallas, Tex.*, 826 F.3d 280, 282 (5th Cir. 2016). For an official policy, the pleadings for a § 1983 claim are adequate against a city when they set

forth "specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged policy or practice was the moving force" for the constitutional violation asserted. *Balle v. Nueces Cty. Tex.*, 690 F.App'x 847, 852 (5th Cir. 2017) (quoting *Spiller v. City of Tex. City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). In the absence of an official policy, plaintiffs may also survive a Rule 12(b)(6) motion if they plead facts to infer that there existed "[a] persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Hick-Fields v. Harris County, Tex.*, 860 F.3d 803, 808-809 (5th Cir. 2017). Finally, a Plaintiff must "sufficiently plead any causal connection between the alleged unconstitutional policy or custom and the harm alleged to have occurred." *Joiner v. Murphy*, 2016 WL 8792315 at *4 (S.D. Tex. Aug. 12, 2016) (quoting *Doe 1—Doe 10 v. City of Wichita Falls, Tex.*, No. 7-06CV-106-R, 2007 WL 959028 at *2 (N.D. Tex. Mar. 30, 2007).

Although Plaintiff appears to identify Chief Finner as the policymaker responsible for the alleged "pattern and practice of using excessive force, condoning excessive force, and keeping excessive force details and "investigations" quiet to hide the lack of discipline," she fails to allege facts to support that the City of Houston had a widespread practice that amounted to a municipal policy. As an initial matter, Plaintiff does not articulate in her Amended Complaint whether she is challenging an official HPD policy or whether she is alleging that a custom or pattern of excessive force is so pervasive that it is essentially a municipal policy. To the extent Plaintiff is bringing her cause of action on the basis of an official policy, Plaintiff does not point to or reference *any* policy in her pleadings, much less how said policy caused the alleged constitutional violation. It is worth noting that the HPD's General Orders and policies are publicly available online and could have been referenced in Plaintiff's Amended Complaint if she had chosen to do so.

Moreover, Plaintiff has failed to plead enough facts to suggest that municipal liability should attach on the basis of a custom or pattern. The Fifth Circuit has previously found that for municipal liability to attach for an unofficial policy based on a custom or pattern, there must be a significant number of previous incidents placed in the context of the size of the police department, the number of criminal incidents investigated, and with specificity that the other incidents are fairly similar to what transpired in the present dispute. *Hicks-Fields*, 860 F.3d at 810; *see also Davidson v. City of Stafford*, 848 F.3d 384, 396-97 (5th Cir. 2017) (three arrests over three and a half years did not establish a pattern of constitutional violations); *Peterson v. City of Fort Worth*, 588 F.3d 838, 851-52 (5th Cir. 2009) (holding 27 complaints of excessive force over a period of three years in a department with more than 1,500 officers did not constitute a pattern); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (holding eleven incidents cannot support a pattern of illegality in Houston); *Moreno v. City of Dallas*, 2015 WL 3890467 at *9 (N.D. Tex. June 18, 2015) (granting motion to dismiss because "facts suggesting an average of less than two incidents of excessive force per year over the course of five years are not sufficient to indicate a pattern of abuses"). Moreover, demonstrating a pattern requires similarity and specificity—prior indications cannot simply be for "any and all "bad" or unwise acts, but rather must point to the specific violation in question." *Peterson*, 588 F.3d 838 at 851 (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005). Isolated incidents do not constitute a pattern because there must be "sufficiently numerous prior incidents" to qualify as a pattern." *Id.* (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).

Although Plaintiff has noted 50 incidents in her Amended Complaint that she contends amount to a practice or custom of excessive force, the Court does not find that these incidents are sufficient to meet the similarity requirements to establish a pattern or practice. Plaintiff has cited

14

no statistics of how many similar incidents or investigations similar to the present dispute have taken place in the HPD, or the size of the HPD department in question. Furthermore, Plaintiff's references to incidents in her Amended Complaint, although numerous, are not necessarily relevant. For example, 34 of the 50 instances Plaintiff cites occurred in a jail setting; 32 of the 50 instances involved hands-on force; 11 of the 50 instances arose from a felony traffic stop or a high-risk vehicle approach; and 47 of the 50 instances occurred more than ten years ago. (Doc. No. 16 at 14). Plaintiff has not pled that her cause of action has anything to do with excessive force taking place in a jail setting, or through hands-on force. She has pleaded that Officer Inocencio drove up and shot Lockett, and that when Lockett attempted to flee, the other Individual Officers shot Lockett in the back.

Of the various examples Plaintiff cites, the only one that could potentially be relevant refers to the "infamous Harding Street Raid" from 2019 where Plaintiff alleges "HPD needlessly attacked a house without identifying themselves," "lied on the arrest warrant affidavit to get an arrest warrant," and "did not announce themselves prior to engaging the house occupants." (Doc. No. 13 at 15). Although the present dispute may be somewhat factually similar based on the scant facts that have been pled, this instance, taken on its own, does not allow Plaintiff to overcome the lack of frequency of similar incidents. On its own, a singular incident fails to support an inference of a custom that represents a municipal policy of excessive force on individuals similarly situated to Lockett. Furthermore, it is worth noting that although Plaintiff identifies Chief Finner as the policymaker of the pattern or practice of excessive force she alleges, she disregards the fact that Chief Finner was only sworn in as Chief of Police of the HPD on April 5, 2021. Not only had Chief Finner only been in his role for a mere nine months prior to Lockett's death, but he was not serving as the alleged policymaker during any of the incidents that Plaintiff cited. Thus, Plaintiff's

examples—while numerous—are either too factually dissimilar, too remote, or too infrequent, and thus insufficient to indicate a pattern of abuses by the City of Houston.

Given the lack of factual similarity between the facts Plaintiff has pled in her Amended Complaint and the examples she cites, this Court finds that these alleged incidents are not widespread or persistent enough to demonstrate a pattern or to suggest that an unofficial widespread practice exists that could essentially represent a municipal policy. Moreover, since Plaintiff's Amended Complaint has failed to mention any causal connection between the alleged unconstitutional policy or custom and the harm alleged to have occurred, Plaintiff also fails to plead moving force. Thus, Plaintiff's § 1983 claims against the City of Houston must be dismissed for failure to state a claim.

## IV.  Conclusion

For the foregoing reasons, the Court hereby **GRANTS** in part and **DENIES** in part the Motions to Dismiss (Doc. Nos. 15, 16, 28).

The Court hereby dismisses Plaintiff's (1) state law assault claims and (2) Fourteenth Amendment claims against all Defendants and Plaintiff's (3) § 1983 claims against Chief Finner and (4) § 1983 claims against the City of Houston. These claims are hereby dismissed with prejudice.

Plaintiff's §1983 claims against defendants Inocencio, Villarreal, Carroll, and Houlihan in their individual capacities survive dismissal.

Signed at Houston, Texas, this 24th day of February, 2023.

Andrew S. Hanen
United States District Judge